IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL MEER,<br><br>      Plaintiff,<br><br>  v.<br><br>BRUCE GRAHAM, Dean of the University of Illinois at Chicago College of Dentistry; SYLVIA MANNING, Chancellor of the University of Illinois at Chicago; MICHAEL TANNER, Provost of the University of Illinois at Chicago; GENE SBALCHIERO, Acting Head of the Department of Oral and Maxillofacial Surgery and Director of the Postgraduate Program in Oral Maxillofacial Surgery at the University of Illinois at Chicago College of Dentistry; and THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS;<br><br>      Defendants. | Case No. 1:07-cv-001058<br><br>Hon. J. Bucklo |

## AMENDED COMPLAINT

NOW COMES Plaintiff, Dr. Michael Meer ("Dr. Meer"), by and through his attorneys, AZULAY, HORN & SEIDEN, LLC, and as his complaint against BRUCE GRAHAM, Dean of the University of Illinois at Chicago College of Dentistry ("Dean Graham"); SYLVIA MANNING, Chancellor of the University of Illinois at Chicago (the "Chancellor"); MICHAEL TANNER, Provost of the University of Illinois at Chicago (the "Provost"); GENE SBALCHIERO, Acting Head of the Department of Oral and Maxillofacial Surgery and Director of the Postgraduate Program in Oral Maxillofacial Surgery at the University of Illinois at Chicago College of Dentistry

("Dr. Sbalchiero") and THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS (the "Board of Trustees"); states as follows:

## Introduction

1.      This case concerns an employee of the College of Dentistry.  This surgeon, teacher, and member of the faculty was summarily suspended from, *inter alia*, all post-graduate teaching duties at the College of Dentistry by the Dean without a formal charging letter nor the institution of formal suspension or removal proceedings, despite the explicit provision for just such procedures in the University's Statutes and Policies.  Indeed, the Chancellor was not and has not been made part of that procedure despite the explicit provision for same in the Statutes and Policies.  Indeed, Defendants undertook this campaign simultaneously against both Dr. Meer and a Dr. Leslie Heffez ("Dr. Heffez"), who was similarly summarily and without due process removed from his positions as Head of the Department of Oral and Maxillofacial Surgery as well as the Clinical Chief.

2.      Moreover, shortly after the filing of the instant lawsuit, Defendants discharged in retaliation for this case and other legal acts Dr. Meer from his positions as Clinic Chief and Clinical Assistant Professor; Defendants also failed to comport with the University statutes for effecting this discharge.

3.      Plaintiff prays, therefore, that this Court order Defendants to follow the proper procedures set forth by Defendants themselves and reinstate Plaintiff to his former position pending the resolution of that formal procedure.

## Parties

4.     Dr. Meer was the Clinic Chief and Director of the Postgraduate Program in Oral Maxillofacial Surgery at the University of Illinois at Chicago College of Dentistry (the "College") at all times relevant herein.  Dr. Meer is a resident of Cook County, Illinois.

5.     The Board of Trustees is the governing body of the three campuses of the University of Illinois, including the University of Illinois at Chicago, which is located in Cook County, Illinois.  The Board of Trustees is being sued in its official capacity as it was aware of all allegations asserted herein yet did nothing to intervene to ensure that the University was complying with its Statutes and Policies.

6.     Dean Graham is the dean of the College and was at all times relevant herein.  Dean Graham is, on information and belief, a resident of Cook County, Illinois.  Dean Graham is being sued in both his official and personal capacity.

7.     Sylvia Manning is chancellor of the University of Illinois at Chicago and was at all times relevant herein.  The Chancellor is, on information and belief, a resident of Cook County, Illinois.  The Chancellor is being sued in both her official and personal capacity.

8.     Michael Tanner is the provost of the University of Illinois at Chicago and was at all times relevant herein.  The Provost is, on information and belief, a resident of Cook County, Illinois.  The Provost is being sued in his official capacity.

9.     Dr. Sbalchiero was named the Acting Head of the Department of Oral and Maxillofacial Surgery and Director of the Postgraduate Program in Oral Maxillofacial Surgery at the University of Illinois at Chicago College of Dentistry after Dr. Meer and Dr. Heffez were removed from their respective positions.  Dr. Sblachiero signed the letter informing Dr. Meer that

his contract would not be renewed. Dr. Sblachierio is being sued in both his official and personal capacity.

## Factual Background

10.     Dr. Meer graduated from the University of Illinois at Urbana in 1983 with a Bachelor of Science in Biology. He received his Bachelor of Science in Dentistry in 1988. In 1989 he received his Master of Science in Biology from Northeastern Illinois University in Chicago, Illinois. Also in 1989 he received his Doctor of Dental Surgery from the College, and in 1993 he completed his residency in oral and maxillofacial surgery at the University of Kentucky in Lexington.

11.     Dr. Meer is an accomplished surgeon and teacher, and he is fully licensed and accredited in Illinois.

12.     Dr. Meer was the Residency Program Director with the College from October 1997 until September 2006. He has been a Clinical Assistant Professor with the College since April 1994.

13.     Until September 2006, he has had a spotless working record with the College as well as an unblemished professional record.

14.     On or about September 14, 2006 Dean Graham sent a letter to Dr. Meer purporting to "temporarily remov[e] from [Dr. Meer] all duties, responsibilities, and authorities related to the University and College titles of Clinic Chief and Director of the Postgraduate Program in Oral Maxillofacial Surgery" effective immediately and until further written notice from Dean Graham. A true and correct copy of the letter (the "Removal Letter") is attached hereto as **Exhibit A** and incorporated herein.

4

15.     Subsequently, Defendants named Dr. Sbalchiero as the Acting Head of the Department of Oral and Maxillofacial Surgery, a position held immediately prior by Dr. Heffez.

16.     Defendants also subsequently named Dr. Sbalciero Director of the Postgraduate Program in Oral Maxillofacial Surgery at the University of Illinois at Chicago College of Dentistry, a position held immediately prior by Dr. Meer.

17.     On or about September 29, 2006, Dr. Meer, through counsel, informed Dean Graham that his actions were inconsistent with the Graduate Medical Education ("GME") policies (the "Policies") as well as the University of Illinois Statutes (the "Statutes"). This letter requested Dr. Meer's immediate reinstatement as well as immediate notification of the nature of the alleged investigation conducted against Dr. Meer. A true and correct copy of this letter is attached hereto as **Exhibit B** and incorporated herein.

18.     The Statutes provide as follows:

> Campus procedures shall include, at a minimum,
> (1) A determination by the provost, in consultation with a committee identified by the senate, that cause exists to initiate proceedings that may result in the imposition of serious sanctions,
> (2) Notice to the faculty member of the charges and initiation of the sanction proceedings,
> (3) Opportunity for a hearing before an elected committee specified by the senate,
> (4) Provision that a recommendation by the elected committee against sanction will be final,
> (5) The opportunity for the faculty member to file an appeal with the chancellor within 20 days following the provost's decision to impose sanctions,
> (6) An appeal process encompassing both substantive and procedural objections, and
> (7) A process wherein the chancellor's decision on the merits of an appeal is final.
> These campus procedures are the exclusive process for determining whether severe sanctions other than dismissal for cause may be imposed.

Statutes at Art. IX, §6(b).

19.     Moreover, "[t]he campus procedures will be initiated only after discussions are held between the faculty member and appropriate administrative officers looking toward a mutual settlement.." *Id.* at §6(c).

20.     The Statutes further provide as follows:

> The faculty of the University and any of its units except for the Graduate College consists of those members of the academic staff with the rank or title in that unit of professor, associate professor, or assistant professor who are tenured or receiving probationary credit toward tenure, and those administrators in the direct line of responsibility for academic affairs (persons who hold the title director or dean in an academic unit, provost, chancellor and president). Administrative staff members not in the direct line of responsibility for academic affairs are members of the faculty only if they also hold faculty appointments. The bylaws of any academic unit may further mandate a minimum percent faculty appointment in that unit for specified faculty privileges, such as voting privileges.

Art. II, §3(a)(1).

21.     The College of Dentistry bylaws provide as follows:

> The College shall be governed in its internal administration by the following, referred to, for the purpose of these Bylaws, as Faculty:
>
> ...
>
> Those members of the academic staff of the College with the unmodified or modified rank or title of professor, associate professor, assistant professor, or instructor who are not tenured or receiving probationary credit toward tenure and who hold a salaried appointment of at least 20% time in the College[.]

Bylaws at Art. III.

22.     On or about October 17, 2006, the University[1] claimed that the Removal Letter was in accord with the "terms and spirit" of the statutes and applicable policies, but that the action was taken "with the cognizance of the Chancellor." The letter also alleges that "no proceedings for sanction have been initiated." A true and correct copy of this letter is attached hereto as **Exhibit C** and incorporated herein.

23.     On or about October 26, 2006, Dr. Meer responded and reemphasized his position that the University had failed to comply with the applicable Statutes, to wit: the removal of an appointee must occur upon the recommendation of the dean by the Chancellor. A true and correct copy of this letter is attached hereto as **Exhibit D** and incorporated herein.

24.     Dr. Meer also stated that, despite the University's assertion that no sanction proceedings had been initiated, the University had indeed sanctioned Dr. Meer already, *i.e.* the suspension, without instituting a reasonable and effective investigation, as required by the Statutes. *See id.* Dr. Meer also conveyed the severity of the suspension sanction against him:

> Dr. Meer may no longer supervise residents in consulting with or performing surgery on patients that are referred to the clinic. Where he previously spent two to two-and-a-half days supervising surgeries on and consultations with patients in the clinic, he has been denied the opportunity to offer his expertise and provide an important service that has been an integral part of his job. Moreover, the inability to supervise surgeries in the operating room has had a direct impact upon his current and future income. Specifically, part of the income earned by Dr. Meer is tied to the Dental Service Plan ("DSP") operated by the College of Dentistry in conjunction with the University. In the past, he has received quarterly distributions from the DSP that were directly tied to the revenue earned in the operating room from the patients seen and treated by Dr. Meer. Without his continued participation with the

---

[1] For convenience's sake, references to "the University" refer to Steve Holz, Associate University Counsel with the Office of the University Counsel, which, on information and belief, is the in-house counsel office for all three campuses of the University of Illinois, including the College.

> surgical procedures and consults, Dr. Meer's quarterly distribution
> will be severely impacted and his income diminished.

*Id.*

25.     Also in the October 26th letter, Dr. Meer raised the issue that the investigator appointed to conduct the inquiry did not carry the necessary credentials to conduct the information.  *See id.*

26.     In that same letter, Dr. Meer requested a detailed description of the allegations levied against him, an opportunity to address the allegations orally and in writing, the appointment of an impartial and credentialed investigator, and that the investigation be concluded within ten days.  *See id.*

27.     As of October 26, 2006, Dr. Meer still did not know a single fact nor even the broad strokes of the allegations against him that led to his suspension 42 days prior.

28.     On or about November 7, 2006, Dean Graham sent a letter to Dr. Meer directly, despite the fact that Dean Graham and the University's in-house counsel knew he was represented by counsel.  This letter purported to set forth the nature of the allegations against Dr. Meer that led to his suspension on or about September 14, 2006, but in it Dean Graham also stated that it was "likely that [he would] need to continue to look into these matters[;]" *i.e.* Dean Graham admitted he had conducted no investigation and even seemed noncommittal about performing one, despite the removal of Dr. Meer already now almost two-months' old.  A true and correct copy of this letter (the "Charges Letter") is attached hereto as **Exhibit E** and incorporated herein.

29.     On or about November 8, 2006, Dr. Meer informed the University that Dean Graham had communicated the Charges Letter to Dr. Meer directly, rather than through his counsel.  A true and correct copy of this letter is attached hereto as **Exhibit F** and incorporated

herein.   Moreover, Dr. Meer reiterated his objection that Dean Graham continued to run a maverick suspension process and investigation that failed to comport with the Statutes and Policies.

30.     Dr. Meer advised the University that if it received no response to his November 8th letter within ten days, he would consider the Dean's letter (the Charges Letter) of November 7th ratified by the University.

31.     Dr. Meer received no response until November 28, 2006, some 20 days later.

32.     On or about November 28, 2006, the University responded.  A true and correct copy of this letter is attached hereto as **Exhibit G** and incorporated herein.  In that letter, the University asserted again that Dean Graham was violating "neither the letter nor the spirit" of the Statutes.  *Id.*  That letter also wholly failed to cite any provision of the Statutes of Policies that permitted Dean Graham to remove Dr. Meer unilaterally.  The University merely asserted that such action was part of his "administrative decision-making process[.]"  *Id.*

33.     On or about November 30, 2006, Dr. Meer responded with an issue of representation that had by now made itself plain: as Dr. Meer was still an employee of the University, there was an actual conflict in the University's in-house counsel continued representation of the University against Dr. Meer.  A true and correct copy of this letter (the "Conflicts Letter") is attached hereto as **Exhibit H** and incorporated herein.

34.     On or about December 4, 2006, the Conflicts Letter notwithstanding[2], Dr. Meer provided a partial response to the Charges Letter requesting additional time to respond and, in the

---

[2] The University had still failed to provide Dr. Meer with another attorney to contact, but, out of an abundance of caution, Dr. Meer did not wish to present the appearance of a failure to respond timely to the Charges Letter, even though the issuance of the Charges Letter did not comply with the Statutes and Policies.

meantime, requesting a meeting with the Chancellor. A true and correct copy of this letter is attached hereto as **Exhibit I** and incorporated herein.

35.     On or about December 22, 2006, the University again denied Dr. Meer's request to meet with the Chancellor in that "[a]t this point, it would be inappropriate for the Chancellor to insert herself into this process." A true and correct copy of this letter is attached hereto as **Exhibit J** and incorporated herein.

36.     To date, despite the plain language of Article IV, **§**3(e), *et seq.* or Article IX, **§**6(b), *et seq.* of the Statutes, Dean Graham has not made the Chancellor a part of the review of Dr. Meer's suspension nor instituted the formal review process. A true and correct copy of the Statutes is attached hereto as **Exhibit K** and incorporated herein.

37.     Moreover, despite repeated requests via in-person conferences by Dr. Meer to meet with the Chancellor, the University has denied such requests.

38.     Furthermore, despite repeated requests via in-person conferences by Dr. Meer, the University has refused to engage in the formal process mandated by the Statutes and Policies.

39.     Also, Dr. Meer will receive a significantly diminished Dental Service Plan ("DSP") distribution, which represents a substantial sum of compensation.

40.     Finally, on or about May 2, 2007, some three months after the filing of the instant lawsuit, Defendants terminated Dr. Meer from his position as Clinical Assistant Professor and Clinic Chief effective August 15, 2007, the date of the termination of his employment contract. A true and correct copy of this letter (the "Discharge Letter") is attached hereto and incorporated herein as **Exhibit L**.

41.     The Faculty Handbook provides as follows:

There are two periods during the year when decisions regarding notice of nonreappointment must be made by the departments and colleges: before March 1 and before August 16. Assistant professors at more than 50% of full-time service in years two through six of the probationary period should be given notice of nonreappointment by the department before August 16, to be effective at the completion of the following appointment year. Assistant professors at more than 50% of full-time service in year one of the probationary period and full-time research associates, teaching associates, and faculty holding modified research titles (e.g., Research Associate Professor) on a non-tenured basis and paid from "hard" funds (i.e., state, auxiliary, and revolving accounts) must be given notice of nonreappointment by the department prior to March 1 to be effective at the completion of the current appointment year. Assistant professors at 50% or less of full-time service are not eligible for notice rights.

Faculty Handbook, sec. 5, ¶J(1). A true and correct copy of this section of the Handbook is attached hereto as **Exhibit M**.

42. The Statutes also provide that twelve months' written notice of nonreappointment to the full-time academic professional staff must be given to an academic professional employee of four or more years of full-time service to the University. *See* Statutes at Art. IX, §11(1).

43. The definition of "faculty" under the Bylaws in effect before September 2006 and through the present day includes those who hold the "unmodified or modified rank or title of ... assistant professor[,]" and until the expiration of his employment contract Dr. Meer continues to hold the title of Clinical Assistant Professor. A true and correct copy of the relevant section of the Bylaws is attached hereto as **Exhibit N**.

44. Moreover, the most recent rotation schedule issued for the University of Illinois at Chicago Department of Oral & Maxillofacial Surgery is entitled "Faculty Clinic Rotation Schedule," and Dr. Meer is listed therein. A true and correct copy of this Faculty Clinic Rotation Schedule is attached hereto as **Exhibit O**.

## Count One: Petition for Mandamus

45.     Dr. Meer realleges Paragraphs Nos. 1-44 as if fully set forth herein.

46.     Dr. Meer has a clear right to the relief sought herein, namely the institution of the proper investigation proceedings and removal procedures prior to Dr. Meer's suspension as set forth in the Policies and Statutes, a failure that is a suspension without due process of law.

47.     Defendants had a defined duty to perform an unbiased and qualified investigation as well as conduct a proper removal proceeding before the sanction of suspension was levied against Dr. Meer in September 2006, a duty that is wholly ministerial and non-discretionary in that it is set forth in the Policies and Statutes.

48.     As Dr. Meer's harm, described more fully *supra* at ¶¶23 and 38, is not just prospective in nature, but is current, ongoing, and compounding, there is no adequate remedy available to him.


WHEREFORE, Dr. Meer prays that this Honorable Court reinstate Dr. Meer immediately pending a formal review and, furthermore, than this Honorable Court order Defendants to comply with the Policies and Statutes in the institution of this formal review process.  Dr. Meer also prays this Court enter any further relief that is just and equitable.

### Count Two: Petition for Declaratory Judgment

49.     Dr. Meer realleges Paragraphs Nos. 1-48 as if fully set forth herein.

50.     Dr. Meer's suspension without due process constitutes an actual and substantial controversy with Defendants, and the parties have an adverse legal interest of sufficient immediately and reality to warrant declaratory relief.

51.     Specifically, as described more fully *supra* at ¶¶23 and 38, Dr. Meer's harm is not just prospective in nature, but is current, ongoing, and compounding.  His harm, therefore, is both immediate and real.

52.     Moreover, the actual, substantial, and adverse controversy here is comprised of Dr. Meer's suspension without due process and Defendants' wholesale failure to comply with their own explicit ministerial procedures set forth in the Statutes and Policies.

WHEREFORE Dr. Meer prays that this Honorable Court issue a declaratory judgment declaring that Dr. Meer has a right to immediate reinstatement pending a formal review by Defendants that complies with the Policies and Statutes.  Dr. Meer also prays this Court enter any further relief that is just and equitable.

### Count Three: Injunctive Relief

53.     Dr. Meer realleges Paragraphs Nos. 1-52 as if fully set forth herein.

54.     Dr. Meer has a clearly ascertainable right in need of protection, namely the institution of the proper investigation and removal procedures prior to Dr. Meer's suspension as set forth in the Policies and Statutes.

55.     There is a likelihood of success on the merits in that the Policies and Statutes are clear regarding the necessity of and nature of a proper investigation and removal procedures prior to Dr. Meer's suspension; Dr. Meer's instant complaint does not go to the merits of the allegations levied against him in the Charges Letter (though he vigorously denies same), but merely the due process afforded him by the Policies and Statutes.

56.     Plaintiff will suffer irreparable injury should this court not grant the injunction. As described more fully *supra* at ¶¶23 and 38, Dr. Meer's harm is not just prospective in nature, but is current, ongoing, and compounding.

57.     Moreover, there is no adequate remedy at law due to the current, ongoing, and compounding nature of Dr. Meer's harm, as described *supra* at ¶¶23 and 38.

58.     Balancing hardships weigh in favor of granting an injunction against Defendants mandating an immediate reinstatement of Dr. Meer's former position pending a formal review by Defendants that complies with the Policies and Statutes in that Dr. Meer's harm is immediate, but Defendants will suffer no harm whatsoever.  An order to force a university to comply with its own statutes is no burden at all, especially in the instant case where Dr. Meer's only request is to be heard in the proper forum and with the proper procedures, which forum and procedures have been set forth by Defendants in the Statutes and Procedures.

WHEREFORE, Dr. Meer prays that this Honorable Court reinstate Dr. Meer immediately pending a formal review and, furthermore, than this Honorable Court order Defendants to comply with the Policies and Statutes in this formal review process.  Dr. Meer also prays this Court enter any further relief that is just and equitable.

**Count Four: Violation of Procedural Due Process under 42 USC §1983**

59.     Dr. Meer realleges Paragraphs Nos. 1-58 as if fully set forth herein.

60.     Dr. Meer has both a property and liberty interest in his position at the College that includes the following: (1) property interests in his position as Clinic Chief and Director of the Postgraduate Program in Oral Maxillofacial Surgery; (2) property interests in his compensation related to same as well as money he receives from surgeries he performs, in addition to health and other benefits; (3) the enhancement of his reputation as well as the reputation of the College arising out of surgeries he performs; (4) interests in his current position and non-removal from same that would affect his current and future professional opportunities; and (5) interests in ensuring that the College, University, and Defendant do not defame him in relation to his removal from his positions.

61.     Dr. Meer's removal impinges on his interests and violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

62.     The removal actions outlined *supra* violate the procedural steps explicitly set forth in the Statutes and Policies.

WHEREFORE, Dr. Meer prays that this Honorable Court issue an order declaring that Dr. Meer's procedural due process rights have been violated by Defendants and further that this Court reinstate Dr. Meer immediately pending a formal review and, furthermore, than this Honorable Court order Defendants to comply with the Policies and Statutes in this formal review process. Dr. Meer also prays this Court enter any further relief that is just and equitable.

**Count Five: Violation of Substantive Due Process under 42 USC §1983**

63.    Dr. Meer realleges Paragraphs Nos. 1-62 as if fully set forth herein.

64.    Dr. Meer's fundamental interests here are his property interests in his positions with the College as well as his surgical duties, reputation, and income.

65.    Defendants' acts have arbitrarily and without rational basis impinged on Defendants' property interests and violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

WHEREFORE, Dr. Meer prays that this Honorable Court issue an order declaring that Dr. Meer's substantive due process rights have been violated by Defendants and further that this Court reinstate Dr. Meer immediately pending a formal review and, furthermore, than this Honorable Court order Defendants to comply with the Policies and Statutes in this formal review process. Dr. Meer also prays this Court enter any further relief that is just and equitable.

**Count Six: Violation of Equal Protection under 42 USC §1983**

66.    Dr. Meer realleges Paragraphs Nos. 1-65 as if fully set forth herein.

67.    Dr. Meer's arbitrary removal from his positions and the rogue nature of the investigation against him constitute treatment of Dr. Meer that is different from others similar situated.

68.    There is no rational basis for this arbitrary treatment of Dr. Meer.

16

WHEREFORE, Dr. Meer prays that this Honorable Court issue an order declaring that Dr. Meer's procedural equal protection rights have been violated by Defendants and further that this Court reinstate Dr. Meer immediately pending a formal review and, furthermore, than this Honorable Court order Defendants to comply with the Policies and Statutes in this formal review process. Dr. Meer also prays this Court enter any further relief that is just and equitable.

### Count Seven: Retaliatory Discharge

69.     Dr. Meer realleges Paragraphs Nos. 1-68 as if fully set forth herein.

70.     On or about January 30, 2007, Dr. Meer filed his original complaint in the instant action against Defendants in the Circuit Court of Cook County, Illinois, setting forth the first six causes of action *supra*.

71.     On or about May 2, 2007 Dean Graham and Dr. Sbalchiero signed and delivered to Dr. Meer a letter informing him that his contract as Clinical Assistant Professor and Clinic Chief would not be renewed after the date of its expiration, August 15, 2007.

72.     This letter demands Dr. Meer's resignation with respect to his hospital privileges.

73.     Defendants' actions here constitute adverse employment action and are, on information and belief, in response to his filing of the instant lawsuit.

WHEREFORE, Dr. Meer prays that this Honorable Court reinstate Dr. Meer immediately pending a formal review and, furthermore, than this Honorable Court order Defendants to comply with the Policies and Statutes in this formal review process. Dr. Meer also prays this Court enter any further relief that is just and equitable.

**Count Eight: Petition for Mandamus (Termination of Contract)(In the Alternative)**

74.     Dr. Meer realleges Paragraphs Nos. 1-73 as if fully set forth herein.

75.     Dr. Meer is a member of the academic professional staff and is entitled, therefore, to a minimum of twelve months' notice of his nonreappointment.

76.     The University's May 2, 2007 notice of his August 15, 2007 termination is only three months and thirteen days.

77.     Moreover, the written notice of May 2, 2007 was not provided by the Board of Trustees, as required by the Statutes.

78.     The Statutes provide as follows:

> In cases where the time remaining in the appointment year is less than the required minimum notice period, the notice of nonreappointment shall be accompanied by an offer from the Board of Trustees of a terminal contract for an additional appointment which will extend the current appointment through the period of minimum notice

Statutes, Art. IX, §11(4).

79.     The University has made no such offer of a terminal contract.

80.     Dr. Meer has a clear right to the relief sought herein, namely the offer of a terminal contract as set forth in the Statutes.

81.     Defendants had a defined duty to provide Dr. Meer with a terminal contract, a duty that is wholly ministerial and non-discretionary in that it is set forth in the Statutes.

82.     Ass Dr. Meer's harm, described more fully *supra* at ¶¶23 and 38, is not just prospective in nature, but is current, ongoing, and compounding, there is no adequate remedy available to him

WHEREFORE, Dr. Meer prays that this Honorable Court order Defendants to offer Dr. Meer a terminal contract in compliance with all relevant University Statutes and procedures. Dr. Meer also prays this Court enter any further relief that is just and equitable.


**Count Nine: Petition for Declaratory Judgment (Termination of Contract)(In the Alternative)**

83. Dr. Meer realleges Paragraphs Nos. 1-82 as if fully set forth herein.

84. Dr. Meer's termination and nonrenewal of his contract without due process constitutes an actual and substantial controversy with Defendants, and the parties have an adverse legal interest of sufficient immediacy and reality to warrant declaratory relief.

85. Specifically, as described more fully *supra* at ¶¶38 and 38, Dr. Meer's harm is not just prospective in nature, but is current, ongoing, and compounding. His harm, therefore, is both immediate and real.

86. Moreover, the actual, substantial, and adverse controversy here is comprised of Dr. Meer's termination and nonrenewal without due process and Defendants' wholesale failure to comply with their own explicit ministerial procedures set forth in the Statutes and Policies.


WHEREFORE Dr. Meer prays that this Honorable Court issue a declaratory judgment declaring that Dr. Meer has a right to an immediate terminal contract that complies with the Policies and Statutes. Dr. Meer also prays this Court enter any further relief that is just and equitable.

**Count Ten: Injunctive Relief (Termination of Contract)(In the Alternative)**

87.     Dr. Meer realleges Paragraphs Nos. 1-83 as if fully set forth herein.

88.     Dr. Meer has a clearly ascertainable right in need of protection, namely the offer of a terminal contract as set forth in the Policies and Statutes.

89.     There is a likelihood of success on the merits in that the Policies and Statutes are clear regarding the necessity of the offer of a terminal contract when timely notice has not been provided.

90.     Plaintiff will suffer irreparable injury should this court not grant the injunction. As described more fully *supra* at ¶¶23 and 38, Dr. Meer's harm is not just prospective in nature, but is current, ongoing, and compounding.

91.     Moreover, there is no adequate remedy at law due to the current, ongoing, and compounding nature of Dr. Meer's harm, as described *supra* at ¶¶23 and 38.

92.     Balancing hardships weigh in favor of granting an injunction against Defendants mandating an immediate offer of a terminal contract that complies with the Policies and Statutes in that Dr. Meer's harm is immediate, but Defendants will suffer no harm whatsoever.  An order to force a university to comply with its own statutes is no burden at all.


WHEREFORE Dr. Meer prays that this Honorable Court issue a declaratory judgment declaring that Dr. Meer has a right to an immediate terminal contract that complies with the Policies and Statutes.  Dr. Meer also prays this Court enter any further relief that is just and equitable.

**Count Eleven: Violation of Procedural Due Process under 42 USC §1983**
**(Termination of Contract)(In the Alternative)**

93.     Dr. Meer realleges Paragraphs Nos. 1-88 as if fully set forth herein.

94.     Dr. Meer has both a property and liberty interest in his position at the College that includes the following: (1) property interests in his position as Clinic Chief and Clinical Assistant Professor; (2) property interests in his compensation related to same as well as money he receives from surgeries he performs, in addition to health and other benefits; (3) the enhancement of his reputation as well as the reputation of the College arising out of surgeries he performs; (4) interests in his current position and non-removal from same that would affect his current and future professional opportunities; and (5) interests in ensuring that the College, University, and Defendant do not defame him in relation to his removal from his positions.

95.     Dr. Meer's termination and nonrenewal impinges on his interests and violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

96.     The removal actions outlined *supra* violate the procedural steps explicitly set forth in the Statutes and Policies.


WHEREFORE, Dr. Meer prays that this Honorable Court reinstate Dr. Meer immediately pending a formal review and, furthermore, than this Honorable Court order Defendants to comply with the Policies and Statutes in this formal review process.  Dr. Meer also prays this Court enter any further relief that is just and equitable.

### Count Twelve: Violation of Substantive Due Process under 42 USC §1983
### (Termination of Contract)(In the Alternative)

97.     Dr. Meer realleges Paragraphs Nos. 1-93 as if fully set forth herein.

98.     Dr. Meer's fundamental interests here are his property interests in his positions with the College as well as his surgical duties, reputation arising wherefrom, and income arising wherefrom.

99.     Defendants' acts have arbitrarily and without rational basis impinged on Defendants' property interests and violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution.


WHEREFORE, Dr. Meer prays that this Honorable Court issue an order declaring that Dr. Meer's substantive due process rights have been violated by Defendants and further that this Court order the offer of a terminal contract in compliance with the Statutes.  Dr. Meer also prays this Court enter any further relief that is just and equitable.


### Count Thirteen: Violation of Equal Protection under 42 USC §1983
### (Termination of Contract)(In the Alternative)

100.     Dr. Meer realleges Paragraphs Nos. 1-96 as if fully set forth herein.

101.     Dr. Meer's arbitrary termination and nonrenewal from his positions and the rogue nature of the adverse employment action against him constitute treatment of Dr. Meer that is different from others similar situated.

102.     There is no rational basis for this arbitrary treatment of Dr. Meer.

WHEREFORE, Dr. Meer prays that this Honorable Court issue an order declaring that Dr. Meer's equal protection rights have been violated by Defendants and further that this Court order the offer of a terminal contract in compliance with the Statutes. Dr. Meer also prays this Court enter any further relief that is just and equitable.

Respectfully submitted,

s/Roland Lara
_____
Roland Lara
Linda Babich
Attorneys for Plaintiff
AZULAY, HORN & SEIDEN, LLC
205 North Michigan Avenue, 40th Floor
Chicago, Illinois 60601
(312) 832-9200